1
2
3
4
5
6
7                          UNITED STATES DISTRICT COURT

8                          EASTERN DISTRICT OF CALIFORNIA

9

10    MEGAN D. ERASMUS,

11                      Plaintiff,                    No. 2:21-cv-01149-TLN-KJN

12            v.

13    ANDREA TSE M.D., INC.,                          **ORDER**

14                      Defendant.

15

16          This matter is before the Court on Defendant Andrea Tse M.D., Inc.'s ("Defendant")

17    Motion to Dismiss.  (ECF No. 4.)  Plaintiff Megan Erasmus ("Plaintiff") opposed the motion.

18    (ECF No. 7.)  Defendant replied.  (ECF No. 9.)  For the reasons set forth below, the Court

19    DENIES Defendant's Motion to Dismiss.  (ECF No. 4.)

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

                                            1

1    **I.      FACTUAL AND PROCEDURAL BACKGROUND**[1]

2         The instant case arises out of Plaintiff's alleged inability to access videos on Defendant's

3    website.  Plaintiff is completely deaf and relies entirely on closed captioning to consume audio

4    content such as movies, videos, or tutorials.  (ECF No. 1 at 1.)  Defendant owns or operates

5    Folsom Plastic Surgery Optimal U Aesthetic Skin and Wellness Center (the "Clinic") and owned

6    or operated its website, http://www.optimaluclinic.com/ (the "Website").  (*Id.* at 2.)  Plaintiff

7    asserts the Website is a nexus between Defendant's customers and the privileges, goods, or

8    services Defendant offers.  (*Id.* at 3.)  Plaintiff alleges Defendant "offers videos on its Website to

9    induce customers to purchase its goods and to provide ideas on how to best use them."  (*Id.*)

10   Plaintiff visited the Website in June 2021 as a prospective customer to look for information about

11   the Clinic and its services.  (*Id.* at 3–4.)  Plaintiff discovered the video content on the website

12   lacked closed captioning which made her unable to fully understand and consume the video

13   contents.  (*Id.* at 3–4.)

14        Plaintiff further alleges she experienced difficulty and discomfort in attempting to view

15   videos for cosmetic procedures.[2]  (*Id.* at 4.)  As a result of this inaccessibility, she was "unable to

16   understand the content and was deterred from further use of the Website."  (*Id.*)  Plaintiff alleges

17   "[d]espite multiple attempts to access the Website using [her] computer, Plaintiff has been denied

18   the full use and enjoyment of the facilities, goods and services offered by Defendant[] as a result

19   of the accessibility barriers."  (*Id.*)  Further, Plaintiff claims she "is a tester in this litigation and

20   seeks future compliance with all federal and state laws . . . [and she] will return to the Website to

21   avail herself of its goods and/or services and to determine compliance with the disability access

22   laws once it is represented to her that [Defendant] and [the] Website are accessible."  (*Id.* at 4–5.)

23        On June 29, 2021, Plaintiff filed a Complaint alleging Defendant violated Title III of the

24   Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12188, and the California Unruh

25   _____

26   [1]      The following recitation of facts is taken, sometimes verbatim, from Plaintiff's Complaint.
     (ECF No. 1.)

27

28   [2]      Plaintiff references the cosmetic procedure as "Forever Bare BBL" but does not define the
     term.  (ECF No. 1 at 4.)

1   Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51–53.  (*Id.* at 6–7.)  On September 21, 2021,

2   Defendant moved to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure

3   ("Rule" or "Rules") 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to

4   state a claim upon which relief can be granted.  (ECF No. 4-1.)  Plaintiff subsequently filed an

5   opposition on October 13, 2021.  (ECF No. 7.)  Defendant filed a reply on October 21, 2021.

6   (ECF No. 9.)

7       **II.   STANDARD OF LAW**

8           A.    Rule 12(b)(1)

9       A motion under Rule 12(b)(1) challenges a federal court's jurisdiction to decide claims

10  alleged in the complaint.  Fed. R. Civ. P. 12(b)(1); *see also id.* at 12(h)(3) ("If the court

11  determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the

12  action.").  A court considering a motion to dismiss for lack of subject matter jurisdiction is not

13  restricted to the face of the complaint and may review any evidence to resolve disputes

14  concerning the existence of jurisdiction.  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.

15  1988); *see also Thornhill Pub. Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir.

16  1979) (in a factual attack on subject matter jurisdiction, "[n]o presumptive truthfulness attaches to

17  plaintiff's allegations.").  "Once challenged, the party asserting subject matter jurisdiction has the

18  burden of proving its existence."  *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009)

19  (quoting *Rattlesnake Coal. v. E.P.A.*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007)).

20      If a plaintiff lacks standing under Article III of the United States Constitution, then the

21  Court lacks subject matter jurisdiction and the case must be dismissed.  *See Steel Co. v. Citizens*

22  *for a Better Env't*, 523 U.S. 83, 102–04 (1998).  Similarly, "if none of the named plaintiffs

23  purporting to represent a class establishes the requisite case or controversy with the defendants,

24  none may seek relief on behalf of himself or any other member of the class."  *O'Shea v. Littleton*,

25  414 U.S. 488, 494 (1974).  To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-

26  fact that is concrete and particularized, as well as actual or imminent, not conjectural or

27  hypothetical; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is

28  redressable by a favorable judicial decision.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)

1  *as revised* (May 24, 2016); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).

2  Plaintiff bears the burden of proof and must "clearly . . . allege facts demonstrating each

3  element." *Spokeo, Inc.*, 136 S. Ct. at 1547 (internal quotations omitted) (quoting *Warth v. Seldin*,

4  422 U.S. 490, 518 (1975)).  "[E]ven named plaintiffs who represent a class 'must allege and show

5  that they personally have been injured, not that injury has been suffered by other, unidentified

6  members of the class to which they belong.'" *Id.* at 1547 n.6 (quoting *Simon v. E. Ky. Welfare*

7  *Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).

8              B.      Rule 12(b)(6)

9          A motion to dismiss for failure to state a claim upon which relief can be granted under

10  Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th

11  Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim

12  showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Ashcroft v. Iqbal*,

13  556 U.S. 662, 677–78 (2009).  Under notice pleading in federal court, the complaint must "give

14  the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell*

15  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

16  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment

17  motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*

18  *v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

19          On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

20  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every

21  reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

22  *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

23  "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

24  relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

25          Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

26  factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

27  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

28  unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss" for failure to state a claim. *Adams v. Johnson*, 355, F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680 (internal quotations omitted).

In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true allegations that contradict matters properly subject to judicial notice).

If a complaint fails to state a plausible claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th

1    Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also*

2    *Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) (finding no abuse of discretion in denying

3    leave to amend when amendment would be futile).  Although a district court should freely give

4    leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such

5    leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]"

6    *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting

7    *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

8         **III.   ANALYSIS**

9         Plaintiff seeks injunctive relief, statutory damages, and attorney's fees against Defendant

10   for discrimination on the basis of her disability in the full and equal enjoyment of the Website.

11   (ECF No. 1 at 6–9.)  Defendant filed the instant motion to dismiss pursuant to Rules (12)(b)(1)

12   and 12(b)(6).  (*See* ECF No. 4-1.)  The Court will address each basis for dismissal.

13         A.    Rule 12(b)(1)

14        Defendant moves to dismiss Plaintiff's ADA claim, arguing the Court lacks subject matter

15   jurisdiction because: (1) Plaintiff has not pleaded she experienced an injury in fact; and (2)

16   Plaintiff's claim is moot.  (ECF No. 4-1 at 8–9.)  The Court will address each argument in turn.

17             *i.     Injury in Fact*

18        Defendant argues Plaintiff fails to plead facts showing the inaccessibility of the Website

19   impeded her access to the goods and services at Defendant's Clinic.  (ECF No. 4-1 at 8.)  Plaintiff

20   opposes, arguing she satisfied the pleading standard to achieve standing.  (ECF No. 7 at 2.)

21        To satisfy the constitutional minimum of standing, "the plaintiff must have suffered an

22   'injury in fact' — an invasion of a legally protected interest which is (a) concrete and

23   particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of*

24   *Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks, citations, and footnote omitted).

25   "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at

26   561.  "At the pleading stage, general factual allegations of injury resulting from the defendant's

27   conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace

28   those specific facts that are necessary to support the claim." *Id.* (alteration in original) (citation

1    and internal quotation marks omitted).  In the ADA context, a plaintiff must demonstrate she

2    encountered a barrier related to her disability that affected her and interfered with her "full and

3    equal enjoyment" of the facility.  *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th

4    Cir. 2011) (en banc).  Once a plaintiff encounters such a barrier, she "has already suffered an

5    injury in fact traceable to the defendant's conduct and capable of being redressed by the courts,

6    and so [s]he possesses standing under Article III . . . ."  *Id.* at 947 (quoting *Doran v. 7-Eleven,*

7    *Inc.*, 524 F.3d 1034, 1042 n.5 (9th Cir. 2008)).

8            Defendant argues Plaintiff does not allege that she was unable to access goods and

9    services or to locate the clinic and its hours as a result of the allegedly inaccessible video(s) on

10   the Website.  (ECF No. 4-1 at 8–9.)  Defendant asserts that because the Website does not offer the

11   ability to purchase goods or services and instead requires all customers to participate in an initial

12   consultation prior to purchasing goods and services, Plaintiff fails to plead facts about how the

13   allegedly inaccessible videos impeded her access to goods and services.  (*Id.*)  In her Complaint,

14   Plaintiff alleges Defendant owns or operates a skin and wellness center, that Plaintiff was a

15   "prospective customer who wished to access Defendant's goods and services," and Plaintiff

16   visited the Website "to look for information about the [C]linic and the scope of its services and

17   work."  (ECF No. 1 at 2–3.)  Plaintiff further alleges the lack of closed captioning on the videos

18   she sought to view on the Website prevented her from accessing material that would have enabled

19   her to decide whether to patronize Defendant's business.  (*See id.* at 3–5.)  When presented with

20   substantially similar allegations, another court in the Eastern District found such allegations were

21   sufficient, "[p]articularly in light of the Supreme Court's admonition that courts must take a broad

22   view of constitutional standing in civil rights cases, especially where, as under the ADA, private

23   enforcement suits are the primary method of obtaining compliance with the Act . . . ."  *Erasmus v.*

24   *Charles W. Perry, M.D., Inc.*, No. 2:21-cv-00915-WBS-KJN, 2021 WL 4429462, at *3 (E.D. Cal.

25   Sept. 27, 2021) (internal quotations omitted) (holding plaintiff pleaded sufficient facts to establish

26   standing to sue under the ADA in a nearly identical action filed by the same Plaintiff and

27   Plaintiff's counsel as the instant action) (quoting *Doran*, 524 F.3d at 1039)).

28   ///

                                          7

Accepting the allegations in Plaintiff's Complaint as true, the Court finds Plaintiff sufficiently pleaded facts about how the allegedly inaccessible videos impeded her access to Defendant's goods and services.  Accordingly, the Court finds Plaintiff adequately pleaded an injury in fact and has standing to sue under the ADA.

<em>ii.</em>      <em>Mootness</em>

Defendant argues the Court should dismiss Plaintiff's ADA claim because the fact that it has removed the video at issue — in addition to other videos that did not have closed captioning capabilities — renders it moot.  (ECF No. 4-1 at 9–10.)  Further, Defendant asserts it does not intend to put the videos it removed back on the Website, nor does it intend to add any video in the future that does not provide closed captioning.  (*Id.*)  In opposition, Plaintiff asserts Defendant has not met its heavy burden to moot this case because it does not offer any evidence that will ensure the website will be compliant moving forward.  (ECF No. 7 at 7–8.)  In reply, Defendant argues it provided declarations from Andrea Tse that state the Website no longer contains any video without closed captioning.  (ECF No. 9 at 3–4; ECF No. 4-3 at 1–2.)  Additionally, Defendant argues the Website will remain ADA compliant moving forward because "putting non-compliant videos back onto [the] Website after purposefully removing any and all videos, including the videos that do have closed captioning, would defy all logic and common sense." (ECF No. 9 at 4.)

Article III of the Constitution limits federal subject matter jurisdiction to "cases" and "controversies."  U.S. Const. Art. III.  "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal citation omitted).  However, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."  *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).  "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

1    In the ADA context, "a defendant's voluntary removal of alleged barriers prior to trial

2    may render a plaintiff's ADA claim moot." *Johnson v. Starbucks Corp.*, Case No. 16-cv-00724-

3    DMR, 2018 WL 5099283, at *4 (N.D. Cal. Oct. 17, 2018) (citing *Oliver v. Ralphs Grocery Co.*,

4    654 F.3d 903, 905 (9th Cir. 2011)); *see also Hubbard v. 7-Eleven, Inc.*, 433 F. Supp. 2d 1134,

5    1145 (S.D. Cal. 2006).  However, "courts have been more reluctant to find that an ADA

6    plaintiff's claims have been mooted where the alleged barriers are not structural in nature, since

7    nonstructural barriers (such as policy changes or features on a website) are more likely to

8    reoccur." *Langer v. Pep Boys Manny Moe & Jack of Cal.*, No. 20-cv-06015-DMR, 2021 WL

9    148237, at *3 (N.D. Cal. Jan. 15, 2021) (citing *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir.

10   2013)) (rejecting mootness finding where the defendant's policy change "could be easily

11   abandoned or altered in the future").

12    Though Defendant has purportedly remedied the Website to be ADA compliant, it is not

13   *absolutely clear* that videos without closed captioning capabilities will never again be posted on

14   the Website as they could easily be posted again.  *See Johnson v. SSR Grp., Inc.*, No. 15-cv-5094-

15   MEJ, 2016 WL 3669994, at *4 (N.D. Cal. July 11, 2016) ("While laudable, these voluntary

16   remediation efforts are not structural in nature, and could easily reoccur despite [d]efendant's best

17   intentions"); *Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1193 (N.D. Cal.

18   2007) ("[T]he continuous addition of new pages to Target.com argues against a mootness

19   finding," as "[a]side from the incompleteness of the modifications and the potential for new

20   pages, it is well-settled law that voluntary cessation of allegedly illegal conduct . . . does not make

21   the case moot." (internal citations and quotations omitted)).  Accordingly, a finding of mootness

22   would be inappropriate.

23    Here, Defendant has not met its burden to show it is absolutely clear the allegedly

24   wrongful behavior could not reasonably be expected to recur.  *See Laidlaw*, 528 U.S. at 190.

25   Therefore, the Court DENIES Defendant's motion to dismiss for lack of subject matter

26   jurisdiction pursuant to Rule 12(b)(1).

27   ///

28   ///

1        B.      Rule 12(b)(6)

2        Defendant moves to dismiss Plaintiff's claims for failure to state a claim upon which relief

3  can be granted.  (ECF No. 4-1 at 4–9.)  Defendant argues Plaintiff fails to state a claim for an

4  ADA violation because Plaintiff fails to plead the requisite "nexus" between the Website and its

5  brick-and-mortar Clinic.  (*Id.* at 4–7.)  In opposition, Plaintiff argues her Complaint "clearly

6  pleads a nexus to a physical location."  (ECF No. 7 at 5.)  Plaintiff asserts there is a nexus

7  between the Clinic, a "brick and mortar facility," and the Website, which "offers information

8  about various treatments offered."  (*Id.*)

9        By enacting the ADA, Congress intended "'to provide a clear and comprehensive national

10  mandate for the elimination of discrimination against individuals with disabilities.'"  *Olmstead v.*

11  *L.C. ex rel. Zimring*, 527 U.S. 581, 589 (1999) (quoting 42 U.S.C. § 12101(b)(1)).  To

12  accomplish that goal, Title III of the ADA provides "[n]o individual shall be discriminated

13  against on the basis of disability in the full and equal enjoyment of the goods, services, facilities,

14  privileges, advantages, or accommodations of any place of public accommodation by any person

15  who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. §

16  12182(a).

17        In defining a place of "public accommodation" subject to Title III protection, the ADA

18  enumerates twelve categories of "places" and "establishments" that mostly reference physical

19  locations.  *Martinez v. San Diego Cnty. Credit Union*, 50 Cal. App. 5th 1048, 1060 (2020).  The

20  implementing regulations refer to a "public accommodation" as a "facility," which is defined as

21  "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock . . . or other

22  real or personal property, including the site where the building, property, structure, or equipment

23  is located."  28 C.F.R. § 36.104.

24        It is unsurprising that a business website is not included within these statutory categories

25  as Congress enacted the ADA in 1990 — well before websites assumed the prominent role they

26  now occupy in American business.  Although the Department of Justice ("DOJ") has previously

27  endorsed the applicability of Title III to "[w]eb sites of public accommodations," the DOJ has

28  provided no specific regulatory guidance as to whether a website may constitute a place of public

1   accommodation if untethered from a physical location.  *Robles v. Domino's Pizza, LLC*, 913 F.3d

2   898, 903, 906–07 (9th Cir. 2019).

3         The Ninth Circuit's position is that even if websites are not "public accommodations"

4   under the ADA, a denial of equal access to a website can nonetheless support an ADA claim "if

5   the denial has prevented or impeded a disabled plaintiff from equal access to, or enjoyment of, the

6   goods and services offered at the defendant's physical facilities."  *See Martinez*, 50 Cal. App. 5th

7   at 1063 (citing *Robles*, 913 F.3d at 905–06).  The Ninth Circuit has also held that Title III's

8   "auxiliary aids and services" requirement can apply to a public accommodation's

9   website.  *See Robles*, 913 F.3d at 905 (("The statute applies to the services *of* a place of public

10   accommodation, not services *in* a place of public accommodation.  To limit the ADA to

11   discrimination in the provision of services occurring on the premises of a public accommodation

12   would contradict the plain language of the statute." (internal citation omitted) (emphasis in

13   original) (quoting *Nat'l Fed'n of the Blind*, 452 F. Supp. 2d at 953)); *see also Bragdon v. Abbott*,

14   524 U.S. 624, 646 (1998) (finding DOJ's administrative guidance in implementing the ADA is

15   entitled to deference).  Thus, the pertinent issue becomes whether the website sufficiently

16   connects customers to the services of a physical store to trigger protection under the ADA.

17   *See Reed v. CVS Pharmacy, Inc.*, No. CV 17-3877-MWF (SKx), 2017 WL 4457508, at *3 (C.D.

18   Cal. Oct. 3, 2017) (holding that to state a claim under the ADA based on a website, a plaintiff

19   must allege "some connection between the good or service complained of and an actual physical

20   place") (citation omitted); *Nat'l Fed'n of the Blind*, 452 F. Supp. 2d at 952.

21         Here, Plaintiff's Complaint alleges the Website is a nexus between customers and the

22   terrestrial based privileges, goods, or services Defendant offers.  (ECF No. 1 at 3.)  Plaintiff

23   further claims, "[i]f the Website had been constructed equally accessible to all individuals,

24   Plaintiff would have been able to navigate the website and avail herself of its goods and/or

25   services."  (*Id.* at 4.)  In the instant motion, Defendant asserts Plaintiff cannot establish the

26   requisite nexus element because no goods or services are available for purchase on the Website

27   — "all services, including the purchase of skincare products, require an in-person consultation at

28   the physical [C]linic location or on Zoom so that a skincare plan can be created for the customer."

11

1   (ECF No. 4-1 at 7.)  Defendant further argues the ADA does not cover a website unless the

2   website itself allows a person to purchase goods or services.  (*See id.* at 6–7.)

3   However, the Ninth Circuit specifically declined in *Robles* to hold that such a nexus

4   requirement exists.  *See Robles*, 913 F.3d at 905 n.6 ("We need not decide whether the ADA

5   covers the websites or apps of a physical place of public accommodation where their

6   inaccessibility does not impede access to the goods and services of a physical location.").

7   "Nowhere do Title III or its implementing regulations state that an inaccessible feature of a public

8   accommodation must *prevent* an individual from accessing the accommodation's good[s] or

9   services for the ADA's protections to apply."[3]  *Erasmus*, 2021 WL 4429462, at *5 (emphasis in

10  original).

11  The language of the statute and implementing regulations is much broader and ensures

12  "no individual with a disability is excluded, denied services, segregated or otherwise treated

13  differently than other individuals because of the absence of auxiliary aids and services," and

14  requiring that public accommodations "furnish appropriate auxiliary aids and services where

15  necessary to ensure effective communication with individuals with disabilities." 42 U.S.C. §

16  12182(b)(2)(a)(iii); 28 C.F.R. § 36.303(c)(1).

17  ///

---

18  [3]      This Court previously ruled on an ADA case involving a blind plaintiff who failed to

19  identify the requisite nexus against a defendant's store website in *Brooks v. Lola & Soto Business Group, Inc.*, No. 2:21-cv-00158-TLN-DB, 2022 WL 616798. (E.D. Cal. Mar. 2, 2022).  The

20  *Brooks* plaintiff alleged the defendant's website was not ADA compliant because its website store locator did not properly function with the screen reading software she had to use as a blind

21  individual.  *Id.* at *1.  The plaintiff alleged she "was unable to find the location and hours of operation of [d]efendant's store on its website, preventing [p]laintiff from visiting the location to

22  purchase products and/or services."  *Id.*  In granting the defendant's motion to dismiss, this Court reasoned the store locator in question "by all indications, would have no functional difference

23  from the results obtained by a simple Google search for Defendant's shop on any internet browser" and therefore there is no explanation as to why this feature would have prevented her

24  from ascertaining defendant's brick and mortar store location.  *Id.* at *7 (citations and alterations omitted).  The instant case differs from *Brooks* — here, the lack of closed captioning features on

25  Defendant's Website inhibits Plaintiff's ability to view information about Defendant's Clinic and the scope of its services as a prospective customer.  (ECF No. 1 at 3–4.)  Since the *Brooks*

26  plaintiff and the instant Plaintiff were attempting to use the respective websites for different tasks

27  (*i.e.* locating the store versus viewing available products and services), the accessibility issues for

28  each plaintiff is different.

Here, Plaintiff, who is deaf, alleges she was a prospective customer who sought to view Defendant's videos on the Website to look for information about the Clinic and its services but was unable to understand them because the videos lacked closed captioning.  (ECF No. 1 at 3–4.) Defendant's Website, therefore, failed to provide the "auxiliary aids and services . . . necessary to ensure effective communication" with Plaintiff, a disabled individual.  *See* 28 C.F.R. § 36.303(c)(1); *see also id.* at § 36.303(b)(1) (defining "auxiliary aids and services" to include "closed captioning" and other accommodations designed to render "aurally delivered information available to individuals who are deaf or hard of hearing").

> Moreover, testimonial videos may often prove valuable to an individual considering whether to solicit a business's services by providing information about prior customers' experiences and the benefits and detriments the viewer is likely to experience if she obtains those services herself.  This is particularly true where, as here, doing so would effect a permanent change to a customer's physical appearance.  Here, however, according to [P]laintiff's [C]omplaint, due to [D]efendant's failure to provide closed captioning or comparable auxiliary aids, this information was only available to prospective customers who can hear.

*Erasmus*, 2021 WL 4429462, at *5.

Accordingly, Plaintiff has alleged adequate facts to show the videos on Defendant's Website provide a non-deaf person a benefit in assessing whether to obtain its services that is unavailable to a deaf person, thereby impeding "full and equal" access to and "enjoyment of" its services for deaf people, and "treat[ing them] differently than other individuals because of the absence of auxiliary aids and services."  42 U.S.C. §§ 12182(a)–12182(b)(2)(A)(iii).  Therefore, Plaintiff has sufficiently stated a claim under Title III of the ADA.  The Court therefore DENIES Defendant's motion to dismiss Plaintiff's ADA claim.

> C.   Unruh Act Claim

Defendant argues the Court should decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim because it is predicated on an insufficient ADA claim.  (ECF No. 4-1 at 10.)  In opposition, Plaintiff argues even if the Court dismisses her federal claims, it should retain supplemental jurisdiction over her state claim.  (ECF No. 7 at 10.)

1    A plaintiff can recover under the Unruh Act on grounds that: (1) a violation of the ADA

2  has occurred under California Civil Code § 51(f); or (2) that she has been denied access to a

3  business establishment due to intentional discrimination in violation of California Civil Code §

4  52.  *See Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 670 (2009).  "[A] violation of the ADA is, *per*

5  *se*, a violation of the Unruh Act."  *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 847

6  (9th Cir. 2004) (emphasis in original).  Therefore, "a plaintiff who pleads a violation of the ADA

7  does not need to allege anything further in order to state a claim under the Unruh Act."  *Nat'l*

8  *Fed'n of the Blind*, 452 F. Supp. 2d at 957 (citing *Lentini*, 370 F.3d at 847).  Here, since Plaintiff

9  has successfully pleaded a violation of the ADA, she has successfully pleaded a violation of the

10  Unruh Act as well.  *Id.*  Accordingly, the Court DENIES Defendant's motion to dismiss

11  Plaintiff's Unruh Act claim.

12    **IV.    CONCLUSION**

13    For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Dismiss

14  (ECF No. 4-1.)  Defendant shall file an answer not later than twenty-one (21) days from the

15  electronic filing date of this Order.

16    IT IS SO ORDERED.

17    DATED:  June 15, 2022

18

19

20                                            _____
                                             Troy L. Nunley
21                                             United States District Judge

22

23

24

25

26

27

28

14